STATE OF NORTH CAROLINA v. WILLIAM EARL McKOY

No. 72

(Filed 24 January 1978)

1. **Constitutional Law § 50— speedy trial—constitutional provisions**

    The right of every person formally accused of crime to a speedy and impartial trial is secured by the fundamental law of this State and guaranteed by the Sixth Amendment to the federal constitution, made applicable to the State by the Fourteenth Amendment.

2. **Constitutional Law § 50— speedy trial—characteristics of right**

    The right to a speedy trial is different from other constitutional rights in that, among other things, deprivation of a speedy trial does not *per se* prejudice the ability of the accused to defend himself; it is impossible to determine precisely when the right has been denied; it cannot be said precisely how long a delay is too long; there is no fixed point when the accused is put to a choice of either exercising or waiving his right to a speedy trial; and dismissal of the charges is the only possible remedy for denial of the right to a speedy trial.

State v. McKoy

3. **Constitutional Law § 50— speedy trial—factors used to determine denial**

   The main factors which the court must weigh in determining whether an accused has been deprived of a speedy trial are (1) the length of the delay, (2) the cause of the delay, (3) waiver by the defendant, and (4) prejudice to the defendant.

4. **Constitutional Law § 52— speedy trial—wilful neglect by prosecution**

   Defendant in a first degree murder prosecution was denied his right to a speedy trial where there was a 22 month delay between his arrest and trial, and the delay for ten of those months was due to the wilful neglect of the prosecution but could have been avoided by reasonable effort.

5. **Constitutional Law § 52— speedy trial—showing that delay was due to wilful neglect of prosecution—burden of proof**

   Where defendant carries the burden of proof by offering evidence which tends to show *prima facie* that the delay is due to the wilful neglect of the prosecution, the State should offer evidence fully explaining the reasons for the delay and sufficient to rebut the *prima facie* showing or risk dismissal.

6. **Criminal Law § 91— trial sixteen months after detainer filed—failure of defendant to notify district attorney—no dismissal**

   Defendant's contention that the trial court erred in denying his motion to dismiss because his trial was held more than sixteen months after a detainer was filed against him and thus in violation of G.S. 15-10.2 is without merit, since defendant failed to comply with the statute by failing to send to the district attorney a notice and request for trial by registered mail.

   Justice MOORE dissenting.

   Chief Justice SHARP joins in the dissenting opinion.

DEFENDANT appeals from decision of the Court of Appeals, 33 N.C. App. 304, 235 S.E. 2d 98 (1977), upholding judgment of *McLelland, J.,* 9 August 1976 Regular Session, WAKE Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging him with the first degree murder of James Franklin Lee on 12 October 1974.

The State's evidence tends to show that around noon on 12 October 1974 defendant was in an apartment at 211 N. State Street in Raleigh. Edmond Lee Gibson, James Franklin (Frankie) Lee, Anna Wright, Charles Daniel Goodwin, Mary Virginia Justice Watson, and perhaps others, were also present. A dispute arose between defendant and Frankie Lee. Defendant slapped Lee who went to his girl friend's house and returned with a gun. Defendant borrowed a shotgun while Lee was gone and upon

Lee's return ordered him to leave the premises by the count of ten and told Anna Wright to begin counting. When she reached eight or nine, defendant shot Frankie Lee. Lee died from gunshot wounds in the head.

Defendant offered no evidence. The jury convicted him of voluntary manslaughter and he was sentenced to eighteen years imprisonment. He appealed to the Court of Appeals contending (1) that the trial court erred in denying his motion to dismiss for lack of a speedy trial and (2) that the trial court erred in denying his motion to dismiss because his trial was held more than sixteen months after a detainer was filed against him and thus in violation of G.S. 15-10.2. The Court of Appeals found no error and defendant appealed to the Supreme Court as of right pursuant to G.S. 7A-30 urging involvement of a substantial constitutional question, *i.e.*, denial of the right to a speedy trial. His petition for discretionary review was also allowed by this Court.

Facts necessary to an understanding of the speedy trial issue are narrated in the following numbered paragraphs:

1. Defendant was arrested on 18 November 1974 upon a warrant charging him with the murder of James Franklin Lee on 12 October 1974. At the time of his arrest defendant was on parole from a seven-to-ten year sentence for involuntary manslaughter in Fayetteville in 1966. Shortly after his arrest his parole was revoked and he was returned to Central Prison to serve the remainder of his sentence. He also had an additional sentence of three years which would terminate on 19 May 1981.

2. A true bill of indictment charging him with the murder of James Franklin Lee was returned by the grand jury on 10 February 1975 and a detainer was filed against him in April 1975.

3. The case was first set for trial on 2 June 1975 but continued at that time on motion of the State for reasons not appearing in the record.

4. Defense counsel Joseph B. Cheshire, V, was appointed in November 1974. On 22 January 1976 Mr. Cheshire filed a motion to dismiss and an affidavit in support thereof alleging, among other things, as follows: (a) The case was scheduled for trial on 2 June 1975 but continued on motion of the State, and counsel orally requested on June 3, 4 and 11 that the district attorney fix a

new trial date and was informed on each occasion that the trial would be set at the earliest possible date; (b) on July 14 and 22, 1975 defense counsel approached the prosecuting attorney concerning a new trial date and was told that "there was no reason to have this defendant tried because he was in prison where he belonged" and the district attorney saw no reason or need to try him; (c) again in August, September, October and December of 1975 defense counsel made inquiry concerning a new trial date and was told by the prosecutor in charge that the case had not been set and would not be set because defendant was in Central Prison where he belonged; (d) defendant's parole in a former case had been revoked because of his arrest in this case; and (e) during all this time defense counsel had attempted to contact but had been unable to locate four material witnesses, namely, Charles Goodwin, Edmond Gibson, Mary Virginia Justice Watson and Clare Jones, all of whom defendant believed to be important to his defense.

On 3 March 1976 Judge McKinnon entered an order denying defendant's motion to dismiss "without prejudice to the defendant's right to show new circumstances when the case is calendared for trial." He ordered the case calendared for trial at or before the 3 May 1976 Session of the court.

5. On 19 February 1976 defendant filed a motion for a material witness order, pursuant to G.S. 15A-803, for the four witnesses named above and for Anna Wright. At the same time he filed a request and motion for a voluntary discovery, pursuant to G.S. 15A-902(a) and a motion for examination of witnesses. On 27 February 1976 Judge McKinnon entered an order granting substantially the relief requested in these motions.

6. The case was subsequently set for trial on 12 April 1976 but defense counsel was unavailable for trial and the case was not called. For reasons not disclosed by the record, the district attorney was thereafter unable to try the case by 3 May 1976 and Judge McKinnon orally extended the time for trial, allegedly for thirty days. When 3 June 1976 passed and the case had not been calendared, defendant, on 8 June 1976, filed a second motion to dismiss for failure to grant a speedy trial, assigning the lapse of time and the unavailability of defense witnesses, particularly Anna Wright. The case was thereafter calendared for trial at the 9 August 1976 Regular Session, Wake Superior Court. When the

case was called defendant renewed his motion to dismiss for lack of a speedy trial. After a hearing upon the motion, Judge McLelland entered an order in pertinent part as follows:

"Upon consideration of the defendant's motion of August 9, 1976, for dismissal for failure to grant a speedy trial, the court after considering the record, the affidavits of counsel for the defendant, the testimony of witnesses for the defendant and of counsel for the State, makes these findings: That the defendant's first motion for prompt or speedy trial was heard by Judge McKinnon on January 30, 1976. Before entry of an order respecting the ruling on that motion, the motion for material witness order was heard by Judge McKinnon on 27 February 1976 and was continued to permit counsel for the State and defendant to determine whether the witnesses alleged to be material voluntarily would permit interviews by the counsel for the defendant and counsel for the State; that the motion for material witness order was again continued on April 1, 1976, by Judge Godwin, upon a failure of all, save one of such, witnesses to appear at the hearing on that date; that a material witness order was never issued; that the order of Judge McKinnon on 3 March 1976 denying defendant's motion to dismiss recited that it was issued without prejudice to the defendant's right to show new circumstances when trial of the action should be calendared, directed trial of the action on or before May 3, 1976; that trial was calendared for April 12, 1976, but not held and the case not called for trial; that defendant's counsel was unavailable for trial; that during the month of June, Judge McKinnon extended the time specified in his order of March 30 [March 3], 1976, for the trial of the action and the evidence is not sufficient to support a finding by this court as to whether such extension was to a limited time; that the trial was next calendared for this session, August 9, 1976; that all of the witnesses alleged to be material, save Anna Pearl Wright, are available at the session; that Anna Pearl Wright is regarded by defendant as a material and crucial witness and there is no showing that Anna Pearl Wright was not available at the April 12, 1976 Session; that there is no sufficient showing that Anna Pearl Wright is a crucial witness.

"WHEREFORE, the court concludes that the delay in calendaring trial from April 12, 1976, until this date, a period of four months, was not a violation of the March 30 [March 3], 1976 order of Judge McKinnon requiring trial by May third; and further that such delay has not been shown to be unreasonable; that possible prejudice to the defendant from the unavailability of the witness, Anna Pearl Wright, has not been shown to be due to the delay in rescheduling trial following April 12, 1976; that the failure to determine the materiality of the several witnesses mentioned in defendant's motion for a material witness order has not been shown to be due to the failure of the State to act nor to a deliberate effort by the State to harass or prejudice the defendant; that the delay in rescheduling trial after April 12, 1976, until this date is not constitutionally unreasonable and prejudicial to the defendant such as to warrant dismissal of the action.

"THEREFORE, IT IS ORDERED that the motion to dismiss be, and is, hereby denied."

The case was thereupon tried at the 9 August 1976 Regular Session, Wake Superior Court and resulted in a verdict of guilty of voluntary manslaughter and a sentence of eighteen years imprisonment. The Court of Appeals found no error.

*Joseph B. Cheshire V and William J. Bruckel, Jr., Attorneys for defendant appellant.*

*Rufus L. Edmisten, Attorney General, by Elisha H. Bunting, Jr., Assistant Attorney General, for the State of North Carolina.*

HUSKINS, Justice.

Defendant contends that the Court of Appeals erred (1) in upholding the trial court's refusal to dismiss the charges against him on the ground that his Sixth Amendment right to a speedy trial had been violated, and (2) in upholding the trial court's refusal to dismiss the charges on the ground that he was not brought to trial within eight months after a detainer was filed against him in violation of G.S. 15-10.2(a). These contentions constitute his only assignments of error. We shall discuss them in the order listed.

[1]   The right of every person formally accused of crime to a speedy and impartial trial is secured by the fundamental law of this State, *State v. Hollars*, 266 N.C. 45, 145 S.E. 2d 309 (1965), and guaranteed by the Sixth Amendment to the federal constitution, made applicable to the State by the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213, 18 L.Ed. 2d 1, 87 S.Ct. 988 (1967). Prisoners confined for unrelated crimes are entitled to the benefits of this constitutional guaranty. *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274 (1969).

[2]   The right to a speedy trial is different from other constitutional rights in that, among other things, deprivation of a speedy trial does not *per se* prejudice the ability of the accused to defend himself; it is impossible to determine precisely when the right has been denied; it cannot be said precisely how long a delay is too long; there is no fixed point when the accused is put to a choice of either exercising or waiving his right to a speedy trial; and dismissal of the charges is the only possible remedy for denial of the right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972).

[3]   So, unless a fixed time limit is prescribed by statute, a claim that a speedy trial has been denied must be subjected to a balancing test in which the court weighs the conduct of both the prosecution and the defendant. The main factors which the court must weigh in determining whether an accused has been deprived of a speedy trial are (1) the length of the delay, (2) the cause of the delay, (3) waiver by the defendant, and (4) prejudice to the defendant. *Barker v. Wingo, supra; State v. Wright*, 290 N.C. 45, 224 S.E. 2d 624 (1976); *State v. Brown*, 282 N.C. 117, 191 S.E. 2d 659 (1972); *State v. Johnson, supra.* No single factor is regarded as either a necessary or sufficient condition to the finding of a deprivation of the right to a speedy trial. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Barker v. Wingo, supra.* See Note, The Right to a Speedy Trial, 20 Stan. L. Rev. 476, 478, n. 15 (1968), for a slightly different approach.

Thus the circumstances of each particular case must determine whether a speedy trial has been afforded or denied, and the burden is on an accused who asserts denial of a speedy trial to show that the delay was due to the neglect or wilfulness of the prosecution. *State v. Johnson,* supra. An accused who has caused or acquiesced in the delay will not be allowed to use it as a vehicle in which to escape justice. *Barker v. Wingo, supra; State v. Wright, supra; State v. Hollars,* 266 N.C. 45, 145 S.E. 2d 309 (1965); *State v. Lowry,* 263 N.C. 536, 139 S.E. 2d 870, *appeal dismissed* 382 U.S. 22, 15 L.Ed. 2d 16, 86 S.Ct. 227 (1965).

[4]   With these principles in mind we now weigh the four balancing factors in light of the evidence in this case.

The length of delay between defendant's arrest and trial, almost twenty-two months, is unusual. Of course some delay is permissible in any case because minimal delays are inherent in every trial. "The possibility of unavoidable delay is inherent in every criminal action. The constitutional guarantee does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case. . . . Neither a defendant nor the State can be protected from prejudice which is an incident of ordinary or reasonably necessary delay. The proscription is against purposeful or oppressive delays and those which the prosecution could have avoided by reasonable effort. *Pollard v. United States,* 352 U.S. 354, 1 L.Ed. 2d 393, 77 S.Ct. 481 (1957)." *State v. Johnson,* 275 N.C. at 273, 167 S.E. 2d at 280. Since "we do not determine the right to a speedy trial by the calendar alone," *State v. Wright, supra,* we must consider the length of the delay in relation to the three remaining factors. *Barker v. Wingo, supra.*

The second factor, the reason for the delay of twenty-two months, is a mixed bag. The grand jury returned the bill of indictment on 10 February 1975 and the case was set for trial on 2 June 1975 but continued on motion of the State for reasons not disclosed. Nothing in the record suggests any purposeful or oppressive delay to this point. Rather, defendant's silence during this period supports our conclusion that he acquiesced in the delay prior to 2 June 1975. However, defense counsel's uncontradicted affidavit tends to show that failure to bring defendant to trial during the next ten months—from June 1975 to April 1976—was due to the wilful neglect of the prosecution and could

have been avoided by reasonable effort. Goaded by Judge McKinnon's order, the prosecution calendared the case for trial on 12 April 1976. Failure to try it at that time is chargeable, in part if not wholly, to defense counsel's unavailability. See Judge McLelland's order and defense counsel's second affidavit. Thereafter, the case was calendared and tried at the 9 August 1976 Session. Nothing in the record will support a finding of purposeful delay by the prosecution during the period from 12 April to 9 August. We must therefore determine whether countervailing factors outweigh the prosecution's purposeful, unexplained delay during the ten months from June 1975 to April 1976 in bringing defendant to trial.

We first note that there are no counterbalancing circumstances arising from waiver by defendant. Nothing in the record suggests waiver during the period of ten months from June 1975 to April 1976. To the contrary, defense counsel's affidavit asserts defendant requested a trial date eight or nine times during that period. The record contains no denial of those allegations. These facts are "entitled to strong evidentiary weight in determining whether defendant is being deprived of the right." *Barker v. Wingo, supra.*

The only counterbalancing factor is the fourth: prejudice to defendant was minimal. Defendant's claim that four of his witnesses became unavailable by reason of the delay is not supported by the record. Edmond Lee Gibson, Charles Daniel Goodwin and Mary Virginia Justice Watson were present at the trial on 9 August 1976 and testified for the State. Anna Wright was absent. We note that in his 22 January 1976 motion to dismiss, defendant did not list Anna Wright as a witness material to his defense. Her name was first included in his February 1976 motions. At the hearing on his motion to dismiss before Judge McLelland, defendant offered evidence tending to show that Anna Wright told Attorney Wade Smith, who originally represented defendant, that she was living with defendant on the day of the shooting; that when Frankie Lee returned to defendant's apartment, "the word was out" that he had a gun; that defendant ordered Lee to leave his apartment by the count of ten and told her to start counting; that while she was counting, Lee "stuck his hands up in his coat" and defendant shot him.

Detective Turnage testified he talked with Anna Wright on 21 October 1974, nine days after the killing, and she stated she was counting as directed by defendant, reached the count of eight or nine, and defendant shot Lee; that defendant then threw the gun on the couch and left; that she never mentioned seeing Lee "stick his hand up in a coat as if to get a gun." Officer Turnage further testified that he went to the scene of the killing immediately after it occurred and found the victim lying on his face in a pool of blood; that Lee did not have a coat on his person at that time and there was no coat in the immediate vicinity of the body. Moreover, Dr. Gordon LeGrand testified that he performed an autopsy on the body of James Franklin Lee on the morning of 13 October 1974 at which time the corpse was "wearing a red turtle neck sweater and tan plaid pants. . . ."

Although credibility and weight of testimony is a matter for the jury, in light of all the evidence it is highly improbable that the testimony of Anna Wright, had she been present, would have affected the result. Yet her testimony, whether true or false, would have required the trial court to submit the issue of self-defense.

[5] So it comes to this: Does the prosecution's *wilful* delay for ten months in bringing defendant to trial outweigh minimal prejudice to defendant occasioned by such delay? On the facts and circumstances revealed by this record the answer is yes. Barring circumstances which justify delay, a defendant desiring a speedy trial is constitutionally entitled to it within a reasonable time. Where, as here, defendant carries the burden of proof by offering evidence which tends to show *prima facie* that the delay is due to the wilful neglect of the prosecution, the State should offer evidence fully explaining the reasons for the delay and sufficient to rebut the *prima facie* showing or risk dismissal. The record before us contains *no evidence* designed to explain or justify the ten-month delay from 2 June 1975 to 12 April 1976. Such indifference to the dictates of the law leaves appellate courts with few options. We hold defendant's first assignment of error is meritorious and must therefore be sustained.

[6] The other assignment argued in defendant's brief has no merit. G.S. 15-10.2(a) provides in pertinent part that when a detainer requiring a prisoner to answer a criminal charge pending against him in the courts of this State is filed against any

prisoner serving a sentence in this State, such prisoner "shall be brought to trial within eight months after he shall have caused to be sent to the district attorney of the court in which said criminal charge is pending, by registered mail, written notice of his place of confinement and request for a final disposition of the criminal charge against him; . . ." Here, defendant admits that he never sent to the district attorney a notice and request for trial "by registered mail" as required by the statute. We hold that he cannot claim the benefits afforded by the statute without complying with its terms. This accords with prior decisions in *State v. Wright*, 290 N.C. 45, 224 S.E. 2d 624 (1976), and *State v. White*, 270 N.C. 78, 153 S.E. 2d 774 (1967).

For the reasons stated we hold that the Court of Appeals erred in sustaining the action of the trial court denying defendant's motion to dismiss for lack of a speedy trial. The decision of the Court of Appeals is therefore reversed and the case remanded to it for further remand to the Superior Court of Wake County for dismissal of the charges in accordance with this opinion.

Reversed and remanded.

Justice MOORE dissenting.

The record before us discloses an unlawful and intentional killing of a human being by an individual who was on parole from a seven to ten year sentence for the unlawful killing of another human being, albeit his conviction in that case was for involuntary manslaughter. Defendant's parole has been revoked and he is now serving the sentence imposed for the first killing. Hence, he has not been deprived of his liberty by reason of the delay in bringing the present case to trial.

As stated in the majority opinion, ". . . deprivation of a speedy trial does not *per se* prejudice the ability of the accused to defend himself; it is impossible to determine precisely when the right has been denied; it cannot be said precisely how long a delay is too long; there is no fixed point when the accused is put to a choice of either exercising or waiving his right to a speedy trial. . . ." Furthermore, as stated in the majority opinion, "The main factors which the court must weigh in determining whether an accused has been deprived of a speedy trial are (1) the length

of the delay, (2) the cause of the delay, (3) waiver by the defendant, and (4) prejudice to the defendant."

Defendant first filed a written motion in January 1976 to dismiss the case because of the delay in bringing it to trial. Prior to this motion, defendant's counsel had only made informal, oral inquiries as to when the case would be tried.

On 3 March 1976, McKinnon, J., entered an order denying defendant's motion to dismiss for lack of a speedy trial "without prejudice to the defendant's right to show new circumstances when the case is calendared for trial," and ordered the case calendared for trial on or before the 3 May 1976 session of court.

When the case was called for trial at the 9 August 1976 session, defendant renewed his motion to dismiss. Judge McLelland, in denying this motion, stated:

"[T]hat trial was calendared for April 12, 1976, but not held and the case not called for trial; that defendant's counsel was unavailable for trial; that during the month of June, Judge McKinnon extended the time specified in his order of March 30 [March 3], 1976, for the trial of the action and the evidence is not sufficient to support a finding by this court as to whether such extension was to a limited time; that the trial was next calendared for this session, August 9, 1976; that all of the witnesses alleged to be material, save Anna Pearl Wright, are available at the session; that Anna Pearl Wright is regarded by defendant as a material and crucial witness and there is no showing that Anna Pearl Wright was not available at the April 12, 1976 Session; that there is no sufficient showing that Anna Pearl Wright is a crucial witness."

Judge McLelland then concluded:

"WHEREFORE, the court concludes that the delay in calendaring trial from April 12, 1976, until this date, a period of four months, was not a violation of the March 30 [March 3], 1976 order of Judge McKinnon requiring trial by May third; and further that such delay has not been shown to be unreasonable; that possible prejudice to the defendant from the unavailability of the witness, Anna Pearl Wright, has not been shown to be due to the delay in rescheduling trial

following April 12, 1976; that the failure to determine the materiality of the several witnesses mentioned in defendant's motion for a material witness order has not been shown to be due to the failure of the State to act nor to a deliberate effort by the State to harass or prejudice the defendant; that the delay in rescheduling trial after April 12, 1976, until this date is not constitutionally unreasonable and prejudicial to the defendant such as to warrant dismissal of the action."

All of defendant's witnesses, with the exception of Anna Wright, were present and available at trial but defendant elected not to offer testimony. We can only conjecture whether Anna Wright would have been called to testify had she been present.

The first written motion to dismiss for denial of a speedy trial was filed in January 1976. This motion was denied on 3 March 1976, and defendant was tried at the 9 August 1976 session, some seven months after the first written motion was filed, and some five months after that motion was denied. Under these circumstances, I do not believe sufficient prejudice has been shown to justify the release of this twice-convicted killer.

I agree with the majority that defendant is not entitled to any relief under G.S. 15-10.2(a).

I vote to affirm the Court of Appeals.

Chief Justice SHARP joins in this dissent.